IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY M. MURPHEY, et al. | ) |
| | ) |
| v. | ) NO. 3-10-0490 |
| | ) JUDGE CAMPBELL |
| LATTIMORE, BLACK, MORGAN & | ) |
| CAIN, P.C. | ) |

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment on Ezell Plaintiffs' Claims (Docket No. 28). For the reasons stated herein, Defendant's Motion is DENIED.

FACTS

Plaintiff Murphey is the liquidating agent for the bankruptcy estate of Southeast Waffles, LLC ("SEW"), and the remaining Plaintiffs ("Ezell Plaintiffs") are creditors of that bankruptcy estate. Plaintiffs have sued Defendant Lattimore, Black, Morgan & Cain, a public accounting firm, for accounting malpractice. Plaintiffs contend that they relied to their detriment on Defendant's audits of the financial statements of now-bankrupt SEW.

Plaintiffs allege that the Ezell Plaintiffs[1] owned and operated Waffle House restaurants in Tennessee and surrounding states. In 1999, the Ezell Plaintiffs sold their Waffle House franchise rights to SEW. Plaintiffs aver that, as a part of the sale, SEW borrowed money from banks and also executed a promissory note of roughly $6.4 million to the Ezell Plaintiffs.

---

[1] For purposes of this Memorandum, "the Ezell Plaintiffs" include their predecessors in interest, including Treetop Enterprises, Inc.

Plaintiffs assert that the Asset Purchase Agreement between the Ezell Plaintiffs and SEW required SEW to provide audited financial statements to the Ezell Plaintiffs each year during which any of the debt remained outstanding. Plaintiffs claim that Defendant conducted audits and provided opinions concerning SEW's financial statements at all relevant times and that Defendant breached the standard of care applicable to such audits and reporting.

Plaintiffs allege that SEW, through suspicious transactions and actions of its chief financial officer, Rebecca Sullivan, became seriously delinquent with respect to its tax obligations. Specifically, by August of 2008, SEW owed the Internal Revenue Service more than $1 million in taxes, plus penalties and interest. In early August of 2008, Sullivan disappeared without notice and the parties discovered suspicious deposits and withdrawals in SEW's checking account, which appeared to have been part of a check-kiting scheme.[2] On August 25, 2008, SEW filed bankruptcy.

Plaintiffs allege that Defendant was aware of inconsistencies in the SEW finances and of the growing tax liability. Plaintiffs claim that Defendant was also aware that Sullivan was holding checks, and yet Defendant failed to alert anyone about the problems, issued unqualified audit opinions, and misrepresented the financial condition of SEW. Plaintiffs maintain that they relied upon the financial audits and statements of Defendant to conduct business and make decisions, particularly lending and credit decisions with respect to the administration of their loan.

Plaintiffs assert claims against Defendant for malpractice, negligence, breach of contract, and aiding and abetting. Defendant has moved for summary judgment on the claims of the Ezell

---

[2] Plaintiffs claim that Defendant aided and abetted the wrongful conduct of Ms. Sullivan.

Plaintiffs, arguing that (1) the statute of limitations bars their claims; (2) Defendant owed no duty to the Ezell Plaintiffs; and (3) the Ezell Plaintiffs sustained no damage traceable to Defendant.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Pennington*, 553 F.3d at 450; *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

## STATUTE OF LIMITATIONS

The Ezell Plaintiffs admit that they knew about their claims and the statute of limitations commenced more than one year before they filed suit on May 10, 2010. Docket No. 31, n.2. Tennessee law fixes a one-year statute of limitation for malpractice suits against certified public

accountants. Tenn. Code Ann. § 28-3-104(a)(2). Plaintiffs argue, however, that their claims are not barred because those claims were tolled by an agreement between Defendant and the Official Committee of Unsecured Creditors in SEW's bankruptcy.

The Tolling Agreement (Docket Nos. 28-17 and 32-29) was entered into by and between Defendant, First Bank, SunTrust Bank and the Official Committee of Unsecured Creditors of SEW. It specifically provides that the Committee "was appointed to represent the interests of all unsecured creditors of the Debtor [SEW]."

Defendant argues that the Ezell Plaintiffs were neither parties to nor beneficiaries of the Tolling Agreement. Defendant contends that the Tolling Agreement applied only to claims belonging to the two banks and claims belonging to the bankruptcy estate itself. Docket No. 29, p.12. The Committee was a party to the Agreement, however, appointed to represent the interests of all unsecured creditors of the Debtor with authority to "perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(c)(5).

The Court finds that the claims belonging to those parties represented by the Committee, including the Ezell Plaintiffs, were also tolled. The Committee had no separate claims of its own to be tolled; it represented the claims of the unsecured creditors. The Committee was not bringing a derivative claim on behalf of the estate; that authority was given to the Liquidating Agent. Docket No. 32-32, § 7.1. In addition, even if the Committee had a derivative claim on behalf of SEW, there was no need for an agreement to toll the statute on that claim because the statute of limitations for

4

any derivative claim would have been extended, at the time of the bankruptcy filing, for two years by the statute. 11 U.S.C. § 108(a).[3]

Defendant argues that the Committee had no authority to bind the individual creditors to the Tolling Agreement. The Committee's agreement to toll the statute of limitations was an action *protecting* the interests of all those it represented, however, not an action to bind an individual creditor to something detrimental.[4] A creditor's committee stands as a fiduciary to the class of creditors it represents, *In re Spiegel*, 292 B.R. 748, 750 (S.D. N.Y. 2003), and has a fiduciary obligation to act in the interests of the members it represents. *In re Haskell-Dawes, Inc.*, 188 B.R. 515, 522 (E.D. Pa. 1995).[5]

Alternatively, the Court finds that the Ezell Plaintiffs, if not parties to the Tolling Agreement, are at a minimum third party beneficiaries thereof. The language of the Tolling Agreement indicates the representative nature of the Committee and evidences the intent to benefit the unsecured creditors, including the Ezell Plaintiffs.

For these reasons, the Court finds that the Ezell Plaintiffs' claims are not barred by the one-year statute of limitations, and Defendant's Motion for Summary Judgment on this issue is denied.

## DUTY

---

[3] The statute provides that the applicable non-bankruptcy statute of limitations is extended for two years after "the order for relief." 11 U.S.C. § 108(a). The commencement of a voluntary case under the Bankruptcy Code constitutes an order for relief. 11 U.S.C. § 301(b).

[4] The interests of the Committee lie in maximizing the return to unsecured creditors of the bankruptcy estate. *In re Whitman*, 101 B.R. 37, 38 (N.D. Ind. 1989). "[A] committee's only duty is to pursue the interests of its members." *Id*.

[5] Defendant points out that the Committee owes a fiduciary duty to the unsecured creditors as a whole, not to the individual members. *In re Kensington Int'l Ltd.*, 368 F.3d 289315 (3d Cir. 2004). In exercising that duty, the Committee here tolled the statute of limitations for all the unsecured creditors it represented, not just the Ezell Plaintiffs.

Defendant asserts that it owed no duty to the Ezell Plaintiffs because its contract was with SEW and it had no knowledge that the Ezell Plaintiffs would rely on its work. In Tennessee, which has adopted Section 577 of the *Restatement (Second) of Torts* (1977), an accountant is liable for providing false information for the guidance of others if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 594 (Tenn. 1991). The accountant's liability extends to the person or persons for whose benefit and guidance he intends to supply the information and anyone with whom the accountant knows the client intends to share that information. *Id*.

Defendant's representative says Defendant never knew that SEW was supplying its financial audit information to the Ezell Plaintiffs. Docket No. 28-6. Yet Defendant has admitted that from the beginning of its engagement, it was aware that SEW needed audited financial statements for its lenders. Docket No. 36, ¶ 10. Defendant has admitted that the amendment to the Asset Purchase Agreement expressly required that SEW deliver its audited financials to Jay Watkins and that Jay Watkins was Ezell, LLC's primary contact. *Id*., ¶¶ 23 and 24.

Moreover, it is reasonable to expect that creditors of SEW and those who were loaning money to SEW would obtain and rely upon SEW's audited financial statements.[6] Liability of accountants in this situation extends to those persons or class of persons, as determined by current business practices and the particular fact situation, whom the accountant at the time the report is published should reasonably expect to receive and rely on the information. *Bethlehem Steel*, 822 S.W.2d at 596.

---

[6] Plaintiff's expert has stated that Defendant knew or should have known that lenders, such as the Ezell Plaintiffs, would receive SEW's audited financial statements and would rely on the information and auditor's opinions contained therein. Docket No. 32-34, p. 9.

The Court finds that there are genuine issues of material fact as to whether Defendant knew or should have reasonably known that the Ezell Plaintiffs, creditors of SEW, would receive and rely upon Defendant's information concerning SEW. Accordingly, Defendant's Motion for Summary Judgment on this issue is denied.

DAMAGES

Defendant claims that the Ezell Plaintiffs cannot show that Defendant proximately caused any damage to them. Proximate cause, however, is generally a question of fact for the jury, especially when the evidence is controverted. *Ward v. City of Lebanon*, 273 S.W.3d 628, 635 (Tenn. Ct. App. 2008). Cause in fact and proximate cause are ordinarily jury questions unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. *Hale v. Ostrow*, 166 S.W. 3d 713, 718 (Tenn. 2005).

Plaintiffs claim that Defendant's malpractice damaged SEW and, in turn, damaged the creditors of SEW, including the Ezell Plaintiffs. Defendant asserts that SEW never had the money to pay off the Ezell Plaintiffs' promissory notes, regardless of Defendant's conduct. Yet Defendant's arguments (pp. 17-19 of Docket No. 29) involve multiple assertions of fact, the credibility of which cannot be judged on a summary judgment motion. *Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 410 (6th Cir. 2008).

Plaintiffs' expert witness has testified that Defendant's method of calculating damages is not an appropriate or accepted methodology. Docket No. 32-34, p. 9. Plaintiff's expert also opines that the cash flows from the SEW restaurants were substantial from 2005 to 2007 and SEW was able to satisfy its current obligations to the Ezell Plaintiffs. In addition, Plaintiffs' expert states that SEW's

7

ongoing cash flows had future value that presumably could have continued to satisfy the obligations of SEW. *Id.*, p. 10.

On a summary judgment motion, credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513 (1986). The Court finds that there are genuine issues of material fact as to whether Defendant's conduct was the proximate cause of damages to the Ezell Plaintiffs. Proximate causation and the measure of any damages are questions for the jury. Accordingly, Defendant's Motion for Summary Judgment on the issue of damages is denied.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment on the Ezell Plaintiffs' claims (Docket No. 28) is DENIED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE