IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY M. MURPHEY, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) Case No. 3:10-cv-00490 |
| v. | ) Judge Campbell/Brown |
| | ) |
| LATTIMORE, BLACK, MORGAN & | ) |
| CAIN, | ) **Jury Demand** |
| | ) |
|     Defendant. | ) |

To:     The Honorable Todd J. Campbell, Chief Judge

## REPORT AND RECOMMENDATION

Presently pending before the Magistrate Judge is Defendant's Motion for Summary Judgment on Murphey's Claims and on Ezells' Aiding and Abetting and Punitive Damages Claims. (Docket Entry 46). Defendant has also filed a Memorandum and Statement of Facts. (Docket Entries 47, 48). Plaintiffs have filed Responses to the Motion and to the Statement of Facts. (Docket Entries 50, 51). Defendant has filed a Reply, and Plaintiffs have filed a Sur-Reply. (Docket Entries 54, 55, 58). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that Defendant's Motion be **DENIED**.

### I. FACTS

Defendant filed a concise statement of ten undisputed facts. (Docket Entry 48). Plaintiffs filed a response and added fifty-nine (59) "additional facts." (Docket Entry 51). Defendant has

1

responded to the additional facts. (Docket Entry 55). The Magistrate Judge has summarized the undisputed facts from these three documents below.[1]

This case arose from the bankruptcy reorganization of Southeast Waffles, LLC ("SEW"). SEW filed for Chapter 11 bankruptcy on August 25, 2008. The Bankruptcy Court confirmed SEW's plan of reorganization on September 30, 2009. Section 7.1 of the Plan appointed Plaintiff Gary Murphey as the Liquidation Agent and granted authority to pursue all causes of action belonging to SEW. Though Section 3.7 of the Plan subordinates the penalties claimed by the IRS to the claims of the unsecured creditors of SEW, the Plan does not abate or forgive the penalties owed to the IRS. As of July 29, 2011, the IRS penalties remain due and owing.

Defendant Lattimore, Black, Morgan & Cain ("LBMC") was SEW's accounting firm during the relevant time period and was responsible for auditing SEW's financial statements. As set out in its engagement letters with SEW, LBMC was obligated to "plan and perform the audit[s] to obtain reasonable assurance that the financials were free of material misstatement, whether from errors, fraudulent financial reporting, misappropriation of assets, or violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity."

SEW earned a profit for the fiscal years ended June 2, 2005, June 1, 2006, and May 31, 2007. For the fiscal year ended June 2, 2005, SEW's members' deficit was less than it was at the end of the prior fiscal year. For the fiscal year ended May 31, 2007, the year before its bankruptcy, SEW showed a net profit of approximately $817,000.

---

[1] While Plaintiffs are required to make a showing that material facts are in dispute, their Response includes facts that are irrelevant and duplicative.

James Shaub was SEW's President, and Becky Sullivan was its CFO. Becky Sullivan knowingly withheld payment of payroll taxes. Cathy Goodman, an employee of SEW, knew SEW was not paying its payroll taxes on time. She shared her concerns about missed payroll taxes with her sister, Connie Kendrick, who was SEW's MIS Director.[2] Goodman had no authority to make any payments without express authorization from Sullivan. Shaub learned in 2006 that Sullivan had failed to remit $600,000 in payroll taxes, and he took immediate action to resolve the tax issues, borrowing the necessary funds from his father-in-law to bring the account current.

Between 2004 and 2007, under the direction of Sullivan, SEW periodically held back checks drafted as payments to the IRS for the company's payroll taxes, in addition to other payments. The held checks were reclassified in the financial statements at LBMC's suggestion to a generic liability category entitled "checks written in excess of bank balance." According to LBMC, the entries were done for "presentation purposes." There were no additional disclosures in or notes to the audited financial statements that Sullivan held checks drafted for payroll taxes and SEW's vendors. LBMC's expert, Michael G. Ueltzen, acknowledged that SEW's financial statements did not contain adequate disclosure of the amounts due to the IRS: "[T]he amounts due were not properly aggregated and disclosed as a liability in a single category, but were included as a liability in one of three categories." LBMC knew that failing to pay payroll taxes violated federal tax law.

---

[2] While the parties did not define "MIS Director," the Magistrate Judge assumes the acronym refers to Management Information Systems Director.

3

The auditors worked primarily out of Shaub's usually-vacant office, entering and exiting the building through a separate entrance from SEW's employees. All SEW accounting employees were instructed to give all auditor-requested information directly to Sullivan.

LBMC drafted the management representation letters and sent them to Sullivan for her review and comments and to obtain Shaub's signature. The drafts prepared by LBMC stated that "[SEW] is paying its . . . payroll taxes in a timely manner." The drafts also included the standard language that "[SEW has] no knowledge of any fraud or suspected fraud affecting the Company involving: a. Management, b. Employees who have significant roles in internal control, or c. Others where the fraud could have a material effect on the financial statement." When Shaub asked Sullivan if all the information contained in the management representation letters was true, she invariably replied that it was and that the letter was ready for his signature.

Shaub learned that Sullivan's "check-holding" had grown into a check kiting scheme running hundreds of thousands of dollars between SEW's accounts at SunTrust and First Bank with no funds to support payment of the checks.

## II. LEGAL DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a

4

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When deciding a motion for summary judgment, the court must review the evidence and draw all reasonable inferences in favor of the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). In order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248. In other words, the nonmovant must produce supporting factual evidence that is not "so conclusively contradicted by the record that no reasonable jury could believe it." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment rather, there must be evidence on which the jury could reasonable find for the nonmoving party. *Anderson*, 477 at 252.

### B. Analysis

1. <u>Plaintiff Murphey's Claims</u>

Defendant seeks to dismiss Plaintiff Murphey's claims because SEW employees knowingly failed to file payroll taxes, and, as liquidating agent, Murphey is imputed with SEW's knowledge and conduct. Murphey does not dispute that any knowledge imputed to SEW is imputed to Murphey as liquidating agent, but he argues that Sullivan's conduct and knowledge is not imputed to SEW and Murphey.

5

Under Tennessee law, a corporation is charged with "constructive knowledge regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment with in the scope of authority, even though the officer or agent does not in fact communicate his knowledge to the corporation." *Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982) (internal quotations omitted). *See also Carter v. Baker's Food Rite Store*, 787 S.W.2d 4 (Tenn. Ct. App. 1989). As the Tennessee Court of Appeals has explained, "[t]he rule is based either upon the fiction of identity of principal and agent or the presumption that an agent has done his duty and communicated his knowledge to the corporation." *Griffith Motors*, 633 S.W.2d at 322. Thus, an exception to the rule occurs when "the agent is dealing with the principal in his own interests or where his interests are adverse to that of the principal so that it is to his own advantage not to impart his knowledge to the principal." *Id.* The key question, then, is whether Sullivan was acting with in the course of her employment or, conversely, was acting in her own interests or adverse to SEW when she failed to pay the taxes.

The Magistrate Judge believes there is a genuine issue of material fact as to whether Sullivan's knowledge can be imparted to SEW and, in turn, to Murphey. Scope of employment is a question of fact, and Plaintiffs have raised a genuine issue of material fact as to whether Sullivan was engaged in conduct that was "different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 938 (Tenn. Ct. App. 1992). In particular, Plaintiffs argue that Sullivan failed to pay payroll taxes in order to retain her position as CFO. The Magistrate Judge believes a reasonable jury could believe Sullivan's

motives were self-preservation rather than serving the interests of SEW. Therefore, the Magistrate Judge believes Defendant has not shown an absence of material fact as to Murphey's claims.³ The Magistrate Judge believes similar questions of fact exist regarding imputing Goodman's and Kendrick's discovery of Sullivan's misconduct to SEW.

Because the Magistrate Judge believes Defendant's Motion should be dismissed on this point, Plaintiffs' argument that the imputation doctrine is not available to Defendant under the adverse interest exception need not be addressed.

2. Recovery for IRS Penalties

Defendant argues that Plaintiff Murphey cannot recover for IRS penalties because the IRS penalties have been subordinated to unsecured creditors, and the bankruptcy estate likely lacks the funds to pay the unsecured creditors' claims in full. Plaintiffs cite to the collateral source rule and claim that the IRS penalties have not been extinguished. Defendant argues that the collateral source rule does not apply to debts discharged in bankruptcy.

The Magistrate Judge agrees with Plaintiffs and believes the collateral source rule applies in this case. "The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to a plaintiff by the amount of recovery the plaintiff receives from sources that are collateral to the tortfeasor." *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994). Defendant argues that applying the collateral source rule to bankruptcy violates the public policy behind the discharge of debts in bankruptcy. The cases cited by Defendant, however, involve personal injury claims where medical debts were already discharged and

---

³ Moreover, neither party addresses Murphey's breach of contract claims. The Magistrate Judge believes the contract claims are clearly still in dispute, as the scope of Defendant's engagement as auditor has not been established.

7

therefore could not be recovered. *See Olariu v. Marrero*, 549 S.E.2d 121, 123-24 (Ga. Ct. App. 2001); *Oliver v. Heritage Mut. Ins. Co.*, 505 N.W.2d 452, 461-62 (Wisc. Ct. App. 1993). Plaintiffs argue that the penalties currently remain due to the IRS and are part of the Chapter 11 estate. The Magistrate Judge agrees with this assessment. Any recovery would become part of the debtor's estate, which would fund the estate for the eventual payment of the IRS penalties. Even though the repayment of the penalties under the plan might be, at best, unlikely, the penalties currently remain due.

3. Defendant's Intentional Wrongdoing

Defendant argues that Plaintiffs' claims for aiding and abetting and for punitive damages should be dismissed, as Plaintiffs cannot prove Defendant engaged in intentional wrongdoing. Defendant is correct that punitive damages claims require proof that Defendant acted intentionally, fraudulently, maliciously, or recklessly and that aiding and abetting claims require proof that Defendant engaged in affirmative misconduct. *See Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 531 (Tenn. 2008); *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 836 (Tenn. 1997). Plaintiffs argue that a jury should decide each of these claims.

The Magistrate Judge agrees with Plaintiffs. Both of these questions should be decided by a jury. Plaintiffs argue that Defendant engaged in wrongdoing by recklessly failing to examine Sullivan's accounting entries. While Plaintiffs' claims may eventually fall short of the reckless standard, the Magistrate Judge believes a sufficient dispute exists for the claims to be decided by a jury.

8

## III. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 20 day of September, 2011.

Joe B. Brown
United States Magistrate Judge